IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| LEVI PACE, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | CIVIL ACTION NO. |
| v. | ) | 2:99CV962-ID-VPM |
| | ) | [WO] |
| MICHAEL W. HALEY, *et al.*, | ) | |
| | ) | |
| Respondents. | ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

**I.  INTRODUCTION AND PROCEDURAL HISTORY**

Levi Pace ["Pace"], a state inmate, filed this 28 U.S.C. § 2254 petition for habeas corpus relief on 2 September 1999, challenging his convictions for first-degree robbery and two counts of attempted murder imposed upon him by the Circuit Court of Chilton County, Alabama, on 29 June 1993.  The trial court sentenced Pace as a habitual felony offender to life imprisonment for each conviction.  The sentences were ordered to run consecutively. (Doc. # 52, Exh. A, clerk's record at 3-4.)

Pace filed a direct appeal of his convictions in which he raised the following claims:

1.    The trial court erred by allowing into evidence a motel registration card on which Pace's fingerprint was discovered because the State failed to establish the chain of custody for the card.

2.    The trial court erred in not granting a judgment of acquittal on the charge of robbery due to a fatal variance between the pleading and the proof at trial.

> 3. The trial court erred by refusing to instruct the jury on assault in the first degree as a lesser included offense of attempted murder.

(Doc. # 52, Exh. B.)  On 6 May 1994, the Alabama Court of Criminal Appeals affirmed Pace's convictions in a written opinion, *Pace v. State*, 652 So.2d 321 (Ala. Crim. App. 1994). (Doc. #52, Exh. D.)  Pace's application for rehearing was overruled on 8 July 1994.  The Alabama Supreme Court denied Pace's petition for certiorari and issued a certificate of judgment on 22 December 1994.  *See Ex parte Pace*, 652 So.2d 328 (Ala. 1994).

On 22 October 1996, Pace's counsel filed a state post-conviction petition pursuant to Rule 32, Alabama Rules of Criminal Procedure.  (Doc. # 52, Exh. E.)  In a written order entered on 8 April 1998, the trial court denied Pace's Rule 32 petition.  (Doc. # 52, Exh. F.) Through counsel, Pace filed a notice of appeal with the clerk of the trial court; the appeal notice was stamped "filed" on 21 May 1998.  (Doc. # 52, Exh. G.)

On 18 February 1999, after Pace had filed his opening appellate brief with the Alabama Court of Criminal Appeals and the State had filed a responsive brief, the State moved to dismiss Pace's appeal on grounds that his notice of appeal was not timely filed. (Doc. # 52, Exh. H.)  In a memorandum opinion dated 26 March 1999, the Alabama Court of Criminal Appeals wrote that "Pace's notice of appeal was filed on May 21, 1998, which is 43 days after his petition was denied," and thus it dismissed Pace's appeal as untimely. (Doc. # 52, Exh. I.)  Pace filed an application for rehearing (Doc. # 52, Exh. J), which the Alabama Court of Criminal Appeals overruled on 28 May 1999.  He then filed a petition for certiorari (Doc. # 52, Exh. K), which the Alabama Supreme Court denied on 12 November

1999.

In the instant application for habeas relief,[1] Pace asserts the following claims:

1.   The State failed to turn over to the defense exculpatory evidence, specifically, forensic reports indicating that all shots were fired from one gun, the victims' hospital records, and clothing worn by the victims at the time of the offense.

2.   The State's primary witness committed perjury regarding the number of persons involved in the commission of the offense.

3.   The prosecutor engaged in misconduct when she argued to the jury that two men shot the victims even though a forensic report indicated that all shots were fired from the same gun.

4.   The State of Alabama's insufficient funding for attorneys prevented counsel from conducting adequate investigation, meeting with witnesses, exploring issues, analyzing information, and performing other duties, resulting in the denial of effective assistance of counsel at trial.  Further, such insufficient funding for attorneys violates the separation of powers doctrine, constitutes a "taking without compensation," and deprives indigent defendants of effective counsel.

5.   Trial counsel rendered ineffective assistance by failing to

     (i)    adequately develop and present a defense, communicate with Pace before and during trial, and investigate the case;

     (ii)   request funds to hire an expert in ballistics and forensics;

     (iii)  obtain and present expert witnesses on fingerprint

---

[1]Pace's habeas petition is before this court following remand by the Eleventh Circuit Court of Appeals, which on 17 September 2002, reversed this court's judgment finding the petition to be barred by the one-year limitation period contained in 28 U.S.C. § 2244(d).  *See Pace v. Jones*, 49 Fed. Appx. 287 (11th Cir. 2002), *reversing and vacating district court's judgment in Pace v. Haley*, Civil Action No. 02:99cv962-ID (M.D. Ala. 2001).

evidence and ballistics;

(iv)    employ an investigator to assist in interviewing witnesses and gathering information;

(v)    interview the State's primary witnesses to discover various shortcomings in their accounts of the offense;

(vi)    challenge the discrimination in the selection of the grand jury foreperson;

(vii)    "make clear" in his discovery motion that he was requesting documents related to the offense, including the victims' hospital records;

(viii)    file a motion to preserve physical evidence and to obtain the clothing worn by the victims at the time of the offense;

(ix)    secure a full transcript of "critical portions" of the trial, including voir dire, jury selection, bench conferences, opening and closing arguments, and a pretrial hearing at which Pace was not present;

(x)    object to Pace's absence from a pretrial hearing on the admission of fingerprint evidence;

(xi)    adequately cross-examine important prosecution witnesses;

(xii)    impeach the victims' trial testimony as being inconsistent with their grand jury testimony and statements to the police;

(xiii)    challenge the victim Lois Blalock's identification of Pace based on her dependence on eyeglasses, the excitement and fright of the circumstances, and "cross-racial identification issues";

4

(xiv)   object to the presence of the victims in the courtroom during the testimony of other prosecution witnesses; and

(xv)   challenge and expose the untruthful testimony of Marietta Prevost that she performed the fingerprint testing at the ABI lab.

6.    Appellate counsel rendered ineffective assistance by failing to

(i)   raise on appeal various violations of Pace's constitutional rights;

(ii)   secure a full transcript of critical portions of the trial; and

(iii)   research, prepare, and argue the following claims on appeal:

      (a)   incomplete discovery based on the State's suppression of exculpatory evidence;

      (b)   the fingerprint examiner did not perform the comparison of Pace's fingerprints with the print on the motel registration card;

      (c)   discrimination in the selection of the grand jury foreperson;

      (d)   prosecutorial misconduct;

      (e)   lack of full transcription of the trial proceedings;

      (f)   a pretrial hearing was conducted in Pace's absence;

5

(g)    the trial court erred in refusing to instruct the jury on second and third degree robbery; and

(h)    the victims were present in the courtroom during the testimony of other prosecution witnesses.

7.    The trial court failed to ensure that all proceedings were fully transcribed, namely, voir dire, jury selection, bench conferences, opening and closing arguments, and a pretrial hearing from which Pace was absent.

8.    Pace was absent during a pretrial hearing concerning the admission of fingerprint evidence.

9.    Inadmissible hearsay evidence was admitted at trial, specifically, Marietta Prevost was allowed to testify concerning a fingerprint-comparison procedure that was performed by a colleague who did not testify.

10.    African-Americans were systematically under-represented as grand jury forepersons in Chilton County.

11.    The motel registration card containing Pace's fingerprint was erroneously admitted into evidence without a proper chain of custody.

12.    The trial court erred by denying Pace's motion for a judgment of acquittal based on a fatal variance between the indictment and the evidence presented at trial with respect to the robbery charge.

13.    The trial court erred by refusing to instruct the jury on assault in the first degree as a lesser included offense of the charges of attempted murder.

14.    The victims were allowed to remain in the courtroom during the testimony of other prosecution witnesses, although the

6

sequestration rule had been invoked.

15.     Pace's consecutive life sentences are disproportionate to his crimes.

16.     Pace's constitutional rights were violated as the result of an arrangement whereby he was encouraged not to testify in exchange for the trial judge's promise to issue a lesser-included aggravated assault charge.

17.     Pace was not provided with expert assistance in his state post-conviction proceeding so that he could develop his ineffective assistance of counsel claim.

18.     The judge who presided at Pace's post-conviction proceeding should have recused himself because he also presided at Pace's trial and was needed as a witness at the post-conviction hearing and because his own rulings and comments evidenced bias against Pace.

Pace asserted each of these claims as well in his Rule 32 petition.  (Doc. # 52, Exhs. E & F.)

In their answer to Pace's habeas petition, the respondents contend that, with the exception of the chain of custody, fatal variance, and lesser included offense claims that Pace raised on direct appeal to the Alabama Court of Criminal Appeals,[2] all of Pace's claims for federal habeas relief are procedurally defaulted due to Pace's failure to present these claims to the state courts in accordance with the state's procedural rules.  *See Brownlee v. Haley*,

---

[2]See above-listed claims numbered 11, 12, and 13.  As indicated above, Pace pursued his direct appeal through the Alabama Supreme Court, which denied certiorari review of the Alabama Court of Criminal Appeals' judgment affirming Pace's conviction.

306 F.3d 1043, 1065 (11th Cir. 2002); *Collier v. Jones*, 910 F.2d 770, 772-73 (11th Cir. 1990).

The respondents maintain that these claims are procedurally defaulted because, though raised in Pace's Rule 32 petition, they were not addressed in an appeal due to Pace's failure to file a timely appeal from the trial court's denial of the Rule 32 petition. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 844-47 (1999); *Coleman v. Thompson*, 501 U.S. 722, 740-42 (1991); *Pruitt v. Jones*, 348 F.3d 1355, 1357-59 (11th Cir. 2003); *Smith v. Jones*, 256 F.3d 1135, 1137 (11th Cir. 2001).

In addition, the respondents argue that Pace's chain of custody, fatal variance, and lesser included offense claims do not entitle him to federal habeas relief because, on direct appeal, the Alabama Court of Criminal Appeals properly adjudicated these claims on the merits. *See Williams v. Taylor*, 529 U.S. 362, 404-05 (2000).

This court provided Pace an opportunity to respond to the answer of the respondents and he has done so. Upon review of the § 2254 petition, the answer of the respondents, Pace's response to the answer, the record in this case, and the opinions issued by the state courts, this court concludes that no evidentiary hearing is required and that the petition is due to be denied in accordance with the provisions of Rule 8(a), *Rules Governing Section 2254 Cases in United States District Courts*.

## II. DISCUSSION

### A.    *Claims Adjudicated by the State Courts*

8

Pace's request for federal habeas relief is governed by 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act. *Price v. Vincent*, 538 U.S. 634, 638 (2003) ("A habeas petitioner whose claim was adjudicated on the merits in state court is not entitled to relief in federal court unless he meets the requirements of 28 U.S.C. § 2254(d)."); *Williams v. Taylor*, 529 U.S. 362, 402 (2000).  Under the requisite provisions of 28 U.S.C. § 2254(d), federal habeas relief from a state court judgment may not be granted unless the adjudication of a claim on the merits in state court –

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In *Williams*, 529 U.S. at 412-13 (2000), the Supreme Court held that:

> Under the "contrary to" clause a federal court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

The Court explained that habeas relief is appropriate when a petitioner demonstrates "that a decision by a state court is 'contrary to' ... clearly established [Supreme Court] law

9

if it 'applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.' *Williams v. Taylor*, 529 U.S. 362, 405-406, 120 S.Ct. 1495, 146 L.Ed. 2d 389 (2000)." *Price*, 538 U.S. at 640 (2003).

Furthermore, federal review in a habeas action "is limited to whether the state court's decision was objectively unreasonable in the light of clearly established federal law. *Williams,* [529 U.S. at 409],120 S.Ct. at 1521." *Hawkins v. Alabama*, 318 F.3d 1302, 1310 (11th Cir. 2003); *Parker v. Head*, 244 F.3d 831, 835 (11th Cir. 2001), citing *Williams*, *supra* ("[F]ederal habeas relief [is] available under the 'unreasonable application' standard only if the state court's application of clearly established federal law was 'objectively unreasonable.'"). A federal district court is not to decide "the correctness *per se* ... of the state court decision" but only the "objective reasonableness" of such decision. *Brown v. Head*, 272 F.3d 1308, 1313 (11th Cir. 2001). Moreover, "an *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Williams*, 529 U.S. at 410 (emphasis in original). "Under § 2254(d)(1)'s 'unreasonable application' clause, ... a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable."

10

529 U.S. at 411.

Federal district courts are similarly directed to determine whether the state court based its findings on "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  A state court's determinations of fact shall be "presumed to be correct," and the habeas petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).  However, even when the state court addresses a question of law, this court is not authorized "to evaluate [a petitioner's] claim *de novo* rather than through the lens of § 2254(d)."  *Price*, 538 U.S. at 639.  The Supreme Court admonishes that such evaluation "exceeds the limits imposed on federal habeas review by 28 U.S.C. § 2254(d)."  *Id*. at 636.

### 1.     The Chain of Custody Claim

Pace contends that the trial court erred by allowing into evidence a motel registration card on which his fingerprint was discovered because the prosecution failed to adequately establish the chain of custody for the card.

The portion of the Alabama Court of Criminal Appeals' opinion relevant to this claim reads as follows:

> At trial, Lois Blalock positively identified the appellant as the person who robbed and shot her and her husband moments after she had given the appellant a motel registration card to complete.

11

Lieutenant Ray Mann of the Clanton Police Department testified that he recovered the registration card (State's Exhibit 8) from the motel desk, that he placed it in a plastic envelope, and that he then sealed the "package."  R. 110. The next day he delivered the envelope to the "ABI [Alabama Bureau of Investigation] fingerprint lab in Montgomery."  R. 110.

When the prosecutor offered the exhibit into evidence, defense counsel objected on the single ground that "the exhibit itself contains extraneous information."  R. 111.  After a bench conference held off the record, the trial court stated:  "The Court is going to decline to admit State's Exhibit 9 pursuant to conversation at side bar, off the record.  We will cover it again in a little while."  R. 111-12.

State's Exhibit 9 was the appellant's fingerprint card, which was made the day of trial pursuant to an order of the court.  R. 114-15.  Outside of the presence of the jury, defense counsel argued that the admission of this card was "unfair and prejudicial" because "right before the hearing" the appellant was "forced to submit to another fingerprinting."  R. 113.  There was no "chain of custody" objection regarding this card.  R. 116.

Marietta Prevost, a latent fingerprint examiner, identified State's Exhibit 10 as being the fingerprints she lifted from State's Exhibit 8.  R. 124. State's Exhibit 10 was admitted into evidence over defense counsel's objection of "[i]mproper predicate identification."  R. 124.  Ms. Prevost then testified, without objection, that "the latent fingerprint developed on the Alabama Lodge of Clanton registration form was made by the same person whose fingerprints appear in the left middle block on this fingerprint card marked State's Exhibit 9 bearing the name of Levi Pace [the appellant].  Could not have been made by any other person."  R. 125-26.

After the fingerprint on the motel registration card (State's Exhibit 8) had been positively identified as belonging to the appellant, the following occurred:

"MRS. HARDWICK [assistant district attorney]:  Nothing further from this witness.  Your Honor, we also offer the registration card that was not admitted earlier, State's Exhibit Number 8.

12

"MR. BOWERS [defense counsel]:  I would again renew my same objection as far as Number 8 is concerned.  Not only the other previous grounds but also still improper predicate, chain.

"THE COURT:  Let's get a little more foundation with regard to 8."  R. 126-27.

The State then established that Ms. Prevost received the registration card identified as State's Exhibit 8 in a sealed condition and that that card was in substantially the same condition as it was when she received it "[w]ith the exception of the marks and case number and initials that [were] placed by our office." R. 127-28. Ms. Prevost testified that she initialed the exhibit and that Carol Curlee, "another examiner in our office," placed some identifying markings on the exhibit.  R. 128.  Ms. Curlee did not testify.

Defense counsel then stated, "I would renew my objection as far as chain is concerned."  R. 129.  That objection was overruled and State's Exhibit 8 was admitted into evidence.

Here, the State failed to establish a proper chain of custody for the admission of State's Exhibit 8, the motel registration card.  As in *Ex parte Works*, 640 So.2d 1056 (Ala. 1994), the State did not 1) identify the person who received the registration card in the "ABI fingerprint lab," 2) identify the person who actually delivered the card to Ms. Prevost or explain how Ms. Prevost came into possession of the card, 3) show the safeguarding and handling of the card while it was in the custody of the "ABI fingerprint lab" or while it was in the custody of the police, and 4) identify the person at the ABI who ultimately disposed of the card.  *See also Ex parte Holton*, 590 So.2d 918, 920 (Ala. 1991).

However, assuming but not deciding that the objection to the chain of custody of the registration card was sufficient to preserve the issue for appellate review, we find that the error in the admission of the registration card was harmless.  As the Alabama Supreme Court stated in *Ex parte Works*:

"The State argues that, even if it was error to admit the knife, the error was harmless.  We agree.  'The admission of incompetent evidence is harmless error where the fact to which such evidence relates is otherwise established by competent

13

evidence.'  Because pictures of the knife and testimony about the knife had been admitted without objection, because the knife had been identified as the one Works had had with him when Edwards was killed, and because it had been established that Edwards died of a stab wound, we hold that the error in admitting the knife was harmless."

*Ex parte Works*, 640 So.2d at 1059 (citations omitted).  Here, the expert had already identified the appellant's fingerprint that had been lifted from the registration card before the registration card itself was admitted into evidence. The actual admission of the card into evidence added nothing of significance to the evidence against the appellant.

In this case, the victim positively identified the appellant and there was no evidence to contradict or conflict with her testimony.  The appellant presented no testimony in his behalf.  "Errors, if any, in admitting fingerprint evidence to prove the accused's presence at the scene of the crime, are harmless where, as here, the accused's presence is undisputed and uncontradicted."  *Coulter v. State*, 438 So.2d 336, 343 (Ala.Cr.App. 1982), *affirmed*, 438 So.2d 352 (Ala. 1983).  *See also Gardner v. State*, 530 So.2d 250, 257 (Ala.Cr.App. 1987), *affirmed*, 530 So.2d 258 (Ala.1988).

*Pace v. State*, 652 So.2d 321, 322-23 (Ala. Crim. App. 1994).  (*See* Doc. #52, Exh. D.)

Federal courts "generally do not review a state trial court's admission of evidence." *McCoy v. Newsome*, 953 F.2d 1252, 1265 (11th Cir. 1992).  "Federal habeas corpus relief based on evidentiary rulings will not be granted unless it goes to the fundamental fairness of the trial."  *Id*.  "In the context of state evidentiary rulings, the established standard of fundamental fairness is that habeas relief will be granted only if the state trial court error was 'material in the sense of a crucial, critical, highly significant factor.'"  *Shaw v. Boney*, 695 F.2d 528, 530 (11th Cir.1983) (quoting *Hills v. Henderson*, 529 F.2d 397, 401 (5th Cir. 1976).

In light of the victim's positive, uncontradicted identification of Pace as the person

14

who robbed and shot her and her husband, this court cannot say that the admission of motel registration card constituted a crucial, highly significant factor in obtaining Pace's conviction.  In addition, the State's expert had already identified Pace's fingerprint that had been lifted from the registration card before the card itself was admitted into evidence.  Thus, as the Alabama Court of Criminal Appeals found, the actual admission of the card into evidence "added nothing of significance" to the evidence against Pace.  Consequently, Pace's claim in this regard cannot serve as a ground for federal habeas corpus relief.  Moreover, the decision of the Alabama Court of Appeals on this issue was not an unreasonable determination of the facts in light of the evidence presented to the state courts; nor did it involve an unreasonable application of federal law.

### 2.      The Fatal Variance Claim

Pace contends that the trial court erred by denying his motion for a judgment of acquittal based on a fatal variance between the pleading and the proof at trial with regard to the robbery charge in Count I of the indictment.

The relevant portion of the Alabama Court of Criminal Appeals' opinion reads as follows:

> The appellant was charged in a multi-count indictment with three offenses that arose out of a single criminal transaction.  *See* Rule 13.3(a)(2), A.R.Crim.P.  Count I of the indictment charged the appellant with robbery in the first degree and averred that while committing a theft, the appellant used or threatened to use force against Lois Blalock and that he did so while "armed

15

with a deadly weapon or dangerous instrument to-wit: a beer bottle and a knife or knife-like object, a better description of said weapon being otherwise unknown to the Grand Jury, in violation of Section 13A-8-41, Code of Alabama, 1975." C.R. 10. Counts II and III of the indictment charged that the appellant attempted to murder Lois Blalock and James Blalock "by shooting [them] with a pistol, a better description of said pistol being otherwise unknown to the Grand Jury." C.R. 10-11.

At trial, there was absolutely no testimony regarding a "beer bottle," "a knife, or [a] knife-like object." It is undisputed that both victims were shot with a pistol. The record contains no explanation for the erroneous description of the weapon contained in Count I of the indictment.

This issue was raised for the first time in the appellant's motion for a judgment of acquittal made at the end of the State's case. In response, the trial judge stated:

"With regard to Count I, Robbery in the First Degree, the Court is of the opinion and finds the testimony that a pistol was used as opposed to a beer bottle and a knife is not such a fatal variance so as to constitute dismissal. The elements-one of the elements of the offense robbery in the first degree is while armed with a deadly weapon. The fact that the testimony supports that such a weapon was a pistol as opposed to a beer bottle and/or a knife, is not, in this Court's opinion, ... fatal such that the issue not be submitted to the jury for [its] determination." R. 134-35.

In his instructions to the jury, the trial judge charged:

"[T]he description that is contained in [Count I of the indictment], that being 'a beer bottle and a knife or knife-like object' is not fatal to this count. That is, because there has been [an] absence of proof with regard to either [a beer bottle or knife-like object], that does not take it from your consideration." R. 143.

* * * *

16

"[A] person commits the crime of Robbery in the First Degree if in the course of committing a theft he uses force or threatens the use – I'm sorry, or threatens imminent use of force against the person of the owner or any person present with intent to overcome his physical resistance or physical power of resistance and he is armed with a deadly weapon or dangerous instrument.

"I charge you that under the law of Alabama a pistol is a deadly weapon.  R. 148.

"'[I]t is sufficient, if the substance of the charge be proved, without regard to the precise instrument used.  Though the indictment charges a particular weapon, the averment is substantially proved, if it be shown that some other instrument was employed, which occasions a wound of the same kind as the instrument charged, and the same consequences naturally follow.'" *Wesson v. State*, 251 Ala. 33, 34, 36 So.2d 361, 362 (1948) (quoting *Hull v. State*, 79 Ala. 32, 33 (1885)).  "An averment in an indictment charging the use of a particular weapon is substantially proved by evidence that some other instrument was employed which occasions a wound of the same kind as the instrument charged and the same consequences naturally follow."  *Farris v. State*, 432 So.2d 538, 541 (Ala.Cr.App.  1983).

"'One of the functions of an indictment is to adequately inform the accused of the crime charged so that a defense may be prepared.  *Ex parte Washington*, 448 So.2d 404, 407 (Ala. 1984).  A variance in the form of the offense charged in the indictment and the proof presented at trial is fatal if the proof offered by the State is of a different crime, or of the same crime, but under a set of facts different from those set out in the indictment.  *Ex parte Hightower*, 443 So.2d 1272, 1274 (Ala. 1983).'

"*Ex parte Hamm*, 564 So.2d 469, 471 (Ala.), *cert. denied*, 498 U.S. 1008, 111 S.Ct. 572, 112 L.Ed.2d 579 (1990).

"... '[T]here must be a material variance between indictment and proof before a conviction

17

> will be overturned for that reason.' *Ex parte Collins*, 385 So.2d 1005, 1009 (Ala.1980) (emphasis in original). 'The law of this state is well settled that "[t]here is no material variance where there is proof of so much of an indictment as shows the defendant committed a substantial offense specified therein."' *House v. State*, 380 So.2d 940, 943 (Ala. 1979). *Compare Ex parte Hightower*, 443 So.2d 1272 (Ala. 1983) (fatal variance between indictment charging sexual misconduct without consent and proof of sexual misconduct with consent obtained by artifice)."

*Lipham v. State*, 616 So.2d 396, 397 (Ala.Cr.App. 1993).

Under prevailing Alabama Supreme Court authority, the discrepancy between the robbery count of the indictment, which alleged that the appellant was armed with a "beer bottle and a knife or knife-like object" and the proof at trial, which established without dispute that the appellant was armed with a pistol, constituted a material variance. *See Huckabee v. State*, 159 Ala. 45, 48 So. 796 (1909), wherein the court found a material variance between an indictment alleging that accused cut victim with a knife and proof at trial that accused shot victim with a pistol and threw victim against a barbed wire fence; *Phillips v. State*, 68 Ala. 469 (Ala. 1881), wherein the court found a material variance between an indictment alleging that accused cut the victim with a knife and proof establishing that accused struck the victim with a pistol.

. . . .

Since the proof at the appellant's trial constituted a material variance from the allegations of Count I of the indictment, the prosecutor should have moved to amend the indictment.

> "The law regarding variances between the proof and the charge are necessarily intertwined with the purpose of amending the indictment. The law on variance seems to suggest the following: If the variance is on a material issue, and a conviction occurs without the indictment's having been amended to conform to the proof, then the conviction will be reversed and the case

18

remanded for a new trial."

H. Maddox, *Alabama Rules of Criminal Procedure* § 13.5 at 413 (1990)
(emphasis in original).  Rule 13.5(a), A.R.Crim.P., provides:

> "A charge may be amended by order of the court with the
> consent of the defendant in all cases, except to change the
> offense or to charge new offenses not contemplated by the
> original indictment.  The court may permit a charge to be
> amended without the defendant's consent, at any time before
> verdict or finding, if no additional or different offense is charged
> and if the substantial rights of the defendant are not prejudiced."
> (Emphasis added.)

*See also* Form 64, A.R.Crim.P. (Motion for Leave to Amend Charge).

Although the prosecutor did not move to amend the indictment pursuant
to Rule 13.5, the trial judge, in effect, amended Count I of the indictment when
he instructed the jury that a pistol was a deadly weapon and when he told the
jury that it could consider evidence that the appellant was armed with a pistol
during the alleged robbery.  *See Styles v. State*, 474 So.2d 185, 188
(Ala.Cr.App. 1985) ("action of the trial court in changing the wording of the
indictment in effect 'constituted an amendment' to the indictment").

The limitation in Rule 13.5 that an amendment must not charge a new
or different offense "does not apply to an amendment that perfects a defective
[indictment] by ... changing the manner in which the crime was committed."
2 W. LaFave & J. Israel, *Criminal Procedure*, § 19.2(g) at 462 (1984)
(emphasis added).  "An indictment may be amended to correct an error in the
description of ... the weapon or other instrument with which the defendant
committed the offense charged." 2 C. Torcia, *Wharton's Criminal Procedure*,
§ 274 at 166-68 (13th ed. 1990).

Rule 13.5 authorized an amendment of Count I of the indictment to
reflect that the appellant was armed with a pistol instead of a "beer bottle and
a knife or knife-like object" because that amendment did not "change the
offense" or charge an "additional or different offense."  Robbery while armed
with a pistol is the "same offense" as robbery while armed with a "beer bottle
and a knife or knife-like object"; the two are simply the "same crime under a

19

different set of facts." The former is the same form of the offense of robbery in the first degree as the latter – theft accomplished by the use or threat of the use of force and while armed with a deadly weapon or dangerous instrument. *See* Ala.Code 1975, § 13A-8-41(a)(1). *Compare Ex parte Hightower*, 443 So.2d at 1274 (defendant charged by solicitor's complaint with sexual misconduct under § 13A-6-65(a)(1); complaint alleged one form of this offense – that defendant engaged in sexual intercourse with victim without her consent – and proof showed another form – that defendant obtained victim's consent by artifice).

"The policy behind the variance rule is that the accused should have sufficient notice to enable him to defend himself at trial on the crime for which he has been indicted and proof of a different crime or the same crime under a different set of facts deprives him of that notice to which he is constitutionally entitled." *House v. State*, 380 So.2d 940, 942-43 (Ala. 1979).

In this case, despite the fact that the State proved the same crime under a different set of facts, the appellant was not deprived of notice sufficient to enable him to defend against the robbery charge. Counts II and III of the indictment had already put defense counsel on notice that he would be called upon to defend the appellant against charges of attempted murder with a pistol. Although the appellant did not testify, he apparently conceded the use of a pistol during the robbery. On cross-examination of Mrs. Blalock, defense counsel attempted to establish that it was the appellant's accomplice who "had the gun" during the robbery. R. 88.

"The element of prejudice to the 'substantial rights of the defendant' is usually interpreted as requiring some showing of surprise which will interfere with the defendant's presentation at trial." LaFave & Israel, § 19.2(g) at 462. The fact that the appellant waited until the end of the State's case, when he made his motion for a judgment of acquittal, to question the averment that he committed robbery while armed with a "beer bottle and a knife or knife-like object" indicates that he had suffered no prejudice in preparing his defense. "[A]n eleventh hour objection [to a variance] is taken as strong evidence belying any ... claim [of prejudice]." LaFave & Israel § 19.2(g) at 468. As in *United States v. Miller*, 471 U.S. 130, 138 n. 5, 105 S.Ct. 1811, 1816 n. 5, 85 L.Ed.2d 99 (1985), the appellant has not shown any "prejudice to his ability to defend himself at trial, to the general fairness of the trial, or to the indictment's sufficiency to bar subsequent prosecutions."

Rule 13.5 authorized the trial court's amendment, without the appellant's consent and over the appellant's objection, because no "additional or different offense" was substituted for the offense charged in the indictment, and because "the substantial rights of the [appellant were] not prejudiced" by the revision. The court's amendment of the robbery count to reflect that the appellant was armed with a pistol instead of with a "beer bottle and a knife or knife-like object" added no element of unfair surprise to the trial or to defense counsel's preparation. *Compare Styles v. State*, 474 So.2d at 188-89 (accused's substantial rights were abridged by trial judge's instruction to jury that they could find accused guilty if they determined that accused enticed one or the other of two named children for immoral purposes, when the indictment charged that accused had enticed both children).

We hold that the proof at trial constituted a material variance from the allegations of Count I of the indictment, but that the indictment was, in effect, amended by the trial judge to conform to the proof, and that the amendment was authorized by Rule 13.5, A.R.Crim.P.

*Pace v. State*, 652 So.2d 321, 323-27 (Ala. Crim. App. 1994) (footnote omitted).

The Eleventh Circuit Court of Appeals has established a two-step inquiry when considering allegations of variance between indictments and proof at trial: "'First, we must determine whether a material variance did indeed occur; and second, whether [the defendant] suffered substantial prejudice as a result of the variance.'" *Thompson v. Nagle*, 118 F.3d 1442, 1453 (11th Cir. 1997) (quoting *United States v. Starrett*, 55 F.3d 1525, 1553 (11th Cir. 1995) (citations in *Starrett* omitted).

The Alabama Court of Criminal Appeals found that, although the proof presented at Pace's trial constituted a material variance from the robbery charge in Count I of the indictment, Pace was not deprived of notice sufficient to enable him to defend against the robbery charge, because Counts II and III of the indictment – alleging the use of a gun in the

attempted murders of Lois Blalock and James Blalock – put the defense on notice that it would be called upon to defend Pace against the charge of using a gun in the robbery that was committed in the same course of events.  Consequently, the appellate court concluded that the variance did not cause Pace substantial prejudice.  This conclusion was not objectively unreasonable.

As the Court of Criminal Appeals also noted, Pace's counsel, when cross-examining the robbery victim Lois Blalock, sought to establish that it was Pace's accomplice who "had the gun" used in the robbery.  Thus, Pace clearly was not surprised by the "gun evidence" introduced at trial.  Because Pace had notice of the allegation that he used a pistol during the commission of the offense, he cannot satisfy the second requirement of his claim – that the variance caused him "substantial prejudice."

Accordingly, this court concludes that the decision of the Alabama Court of Appeals on this issue was not contrary to, or an unreasonable application of, federal law, nor an unreasonable determination of the facts in light of the evidence presented to the state courts. Therefore, Pace is not entitled to any relief based on this claim.


3.      **The Lesser Included Offense Claim**

Pace contends that the trial court erred in refusing to instruct the jury on assault in the first degree as a lesser included offense of the charges of the attempted murder of Lois Blalock and James Hershal Blalock.

22

The portion of the Alabama Court of Criminal Appeals' opinion relevant to this claim reads as follows:

> """[E]very accused is entitled to have charges given which would not be misleading, which correctly state the law of his case, and which are supported by any evidence, however weak, insufficient, or doubtful in credibility."' *Ex parte Stork*, 475 So.2d 623, 625 (Ala. 1985) (quoting *Ex parte Chavers*, 361 So.2d 1106, 1107 (Ala. 1978). Section 13A-1-9(b) [, Ala.Code 1975,] provides, 'The court shall not charge the jury with respect to an included offense unless there is a rational basis for a verdict convicting the defendant of the included offense.'"

*Breckenridge v. State*, 628 So.2d 1012, 1016 (Ala.Cr.App. 1993).

> """A trial judge may refuse to charge on a lesser included offense when it is clear to the judicial mind that there is no evidence to support the jury's being charged on the lesser included offense." Gurganus v. State, 520 So.2d 170, 174 (Ala.Crim.App. 1987).'"

*Jackson v. State*, [Ms. CR 91-820, September 30, 1993] ___ So.2d ___ , ___ (Ala.Cr.App. 1993).

The evidence at trial tended to show the following. During a robbery the appellant used his body to forcefully pin Mrs. Blalock to the floor. He stated at that time, "Hush, or I'll blow your head off – I'm going to kill you." R. 75. Mrs. Blalock raised her head and bumped the appellant in his crotch. The appellant responded by stating, "Damn you, I'm going to kill you now." R. 76. He immediately shot Mrs. Blalock twice. One shot entered her left hip and exited at her waist. The second shot entered her right leg and travelled eight inches inside her leg before stopping. R. 77.

Mr. Blalock entered the room and was immediately shot at by the appellant's accomplice. R. 82. The first shot missed. The accomplice fired again; this shot struck Mr. Blalock and left him unconscious on the floor. The appellant, who had been kneeling on Mrs. Blalock, rose to leave and fired a third shot into Mrs. Blalock. This shot struck her right arm. She testified that

23

rolling over when the appellant stood up prevented this shot from striking near her heart.  R. 83-84.  The appellant turned when he reached the door and shot Mr. Blalock, who was unconscious, in the back near his spine.  R. 84.

     The appellant argues that the evidence supported a jury charge on the lesser included offense of assault in the first degree.  We disagree.  The testimony of Mrs. Blalock was uncontroverted and indicates that the appellant specifically intended to murder the victims.  No evidence was presented to infer any other intent on the part of the appellant.

     We note that the trial judge did not clearly express his reason for refusing to charge the jury on assault in the first degree.  He stated that he refused the charge because "there was no evidence of serious physical injury." C.R. 32, R. 164.  However, the gunshot wounds in this case clearly caused serious physical injury, as that term is defined in Ala.Code 1975, § 13A-1-2(9).  Mrs. Blalock was hospitalized for two days and Mr. Blalock for fourteen days because of the injuries.  The trial judge obviously meant that the evidence did not support the theory that the appellant intended only to inflict serious injury upon the victims rather than to kill the victims.

     There was no factual basis in this case to support a conviction for assault in the first degree.  The jury could not have reasonably inferred, given the appellant's statements, his actions, and the absence of evidence to the contrary, that the appellant's infliction of multiple gunshot wounds to each victim was not intended to cause death.  The only reasonable conclusion from the evidence was that the appellant was guilty of attempted murder.

*Pace v. State*, 652 So.2d 321, 327-28 (Ala. Crim. App. 1994).

"[T]he defendant is entitled to an instruction on a lesser included offense if the evidence would permit a jury rationally to find him guilty of the lesser offense and acquit him of the greater"  *Keeble v. United States*, 412 U.S. 205, 207 (1973).

The Alabama Court of Appeals found that the uncontroverted testimony of Lois Blalock established that Pace's sole intent in shooting the victims was to kill them and that

no evidence was presented to infer any other intent.  Consequently, the appellate court concluded that Pace was not entitled to a jury instruction on assault in the first degree, which would require evidence that he intended only to cause his victims serious physical injury. In light of Pace's statements before shooting the victims, his actions in inflicting multiple gunshot wounds to each victim, and the absence of evidence to the contrary, the only reasonable inference from the evidence was that Pace intended to kill his victims.  Thus, it was not error for the trial court to refuse to instruct the jury on assault in the first degree as a lesser included offense of the charges of the attempted murder.

For these reasons, the court concludes that the decision of the Alabama Court of Appeals on this issue was not contrary to, or an unreasonable application of, federal law, nor an unreasonable determination of the facts in light of the evidence presented to the state courts.  Therefore, the claim is meritless.

**B.**     ***Procedurally Defaulted Claims***

The respondents argue that, with the exception of the three claims that Pace raised on direct appeal to the Alabama Court of Criminal Appeals, all of Pace's claims for federal habeas relief are procedurally defaulted as a result of his failure to file a timely appeal of the state trial court's denial of his Rule 32 petition.  *See Collier v. Jones*, 910 F.2d at 772-73 (federal courts view as procedurally defaulted any claim not pursued on appeal following the denial of a state post-conviction petition); *see also Coleman v. Thompson*, 501 U.S. at 740-42

25

(failure to file timely appeal of denial of state post-conviction petition resulted in default of entire state collateral appeal).

The state trial court denied Pace's Rule 32 petition by a written order entered on 8 April 1998. (Doc. # 52, Exh. F.) Under Rule 4(b)(1) of the Alabama Rules of Appellate Procedure, Pace then had 42 days, or until 20 May 1998, to file a notice of appeal with the clerk of the state trial court.[3] Pace was incarcerated at the time, but he was represented by counsel. On 15 May 1998, Pace's counsel mailed the notice of appeal to the state trial court by regular mail. The notice of appeal was date-stamped "filed" by the clerk of that court on 21 May 1998. (Doc. # 52, Exh. G.)

Although the appeal initially proceeded as though it had been timely filed, with both Pace and the State filing briefs with the Alabama Court of Criminal Appeals, the State, on 18 February 1999, moved to dismiss Pace's appeal as untimely. (Doc. # 52, Exh. H.) Because there was a conflict between the 21 May 1998 date-stamp on Pace's notice of appeal and a certification by the clerk of the state trial court, contained on the Certificate of Completion and Transmission of the Record on Appeal (dated 17 September 1998), indicating that the notice of appeal was filed on 19 May 1998, the Alabama Court of

---

[3]The Alabama Rule of Appellate Procedure govern appeals in post-conviction cases in Alabama. Ala.R.Crim.P. 32.10. Rule 4 of the Alabama Rules of Appellate Procedure provides that "[i]n a criminal case a notice of appeal by the defendant shall be filed with the clerk or the trial court within 42 days (6 weeks) after pronouncement of the sentence." Ala.R.App.P. 4(b)(1). In the context of post-conviction relief, the 42-day appeal period runs from the date of the trial court's denial of the Rule 32 petition. *Barfield v. State*, 703 So.2d 1011, 1012 (Ala. Crim. App. 1997).

26

Criminal Appeals entered an order on 10 March 1999 directing the clerk of the state trial court to certify by 17 March 1999 the actual date on which Pace's notice of appeal was filed. (Doc. # 17, Appx. B.)

In a memorandum opinion dated 26 March 1999, the Alabama Court of Criminal Appeals found that "Pace's notice of appeal was filed on May 21, 1998, which is 43 days after his petition was denied," and thus it dismissed Pace's appeal as untimely. (Doc. # 52, Exh. I.) The appellate court cited the 42-day time period provided in Ala.R.App.P. 4(b)(1) and stated that it lacked jurisdiction in a case where the notice of appeal is untimely. *Id*.

"Federal review of a petitioner's claim is barred by the procedural default doctrine if the last state court to review the claim states clearly and expressly that its judgment rests on a procedural bar, and that bar provides an adequate and independent state ground for denying relief." *Johnson v. Alabama*, 256 F.3d 1156, 1170 (11th Cir. 2001) (quoting *Johnson v. Singletary*, 938 F.2d 1166, 1173) (11th Cir. 1991)). Here, the Alabama Court of Criminal Appeals expressly stated that Pace's notice of appeal was untimely and that, as a consequence, his appeal was dismissed because the court lacked jurisdiction. Thus, the last state court to review Pace's Rule 32 claims stated "clearly and expressly" that its decision to dismiss the appeal rested on a procedural bar; that is, the notice of appeal was untimely. A state procedural bar constitutes an "adequate and independent state ground" for denying relief if the last state court rendering judgment in the case clearly and expressly states that the judgment rests on the procedural default. *Michigan v. Long*, 463 U.S. 1032, 1042-43

27

(1983).

Ordinarily, this court must presume correct and give "due deference" to the determination by the Alabama Court of Criminal Appeals that Pace's appeal from the denial of his Rule 32 petition was untimely under Alabama's procedural rules. *Stafford v. Thompson*, 328 F.3d 1302, 1305 (11th Cir. 2003); *Webster v. Moore,* 199 F.3d 1256, 1259 (11th Cir. 2000). Pace, however, maintains that the state court's determination is not entitled to deference because, he says, Alabama courts do not regularly follow the rule requiring dismissal of an appeal when the notice of appeal is untimely. (Doc. # 56 at 2-5.) "When a state court correctly applies a procedural default principle of state law, federal courts must abide by the state court decision, *Harmon v. Barton*, 894 F.2d 1268, 1270 (11th Cir. 1990), but only if the state procedural rule is regularly followed, *Ford v. Georgia*, 498 U.S. 411, 424 (1991)." *Siebert v. Allen*, 455 F.3d 1269, 1271 (11th Cir. 2006); *see Hurth v. Mitchem*, 400 F.3d 857, 858 (11th Cir. 2005) ("In order to serve as the basis for a procedural bar in federal habeas proceedings, a state rule must be firmly established and regularly followed."). For a state law ground to qualify as "firmly established and regularly followed," it does not have to be applied in every possible instance, but it cannot be applied in a "sporadic or surprisingly harsh manner." *Delap v. Dugger*, 890 F.2d 285, 200 (11th Cir. 1989).

In support of his assertion that Alabama courts do not regularly follow the procedural rule requiring dismissal of untimely appeals, Pace cites three cases where Alabama courts considered or heard an appeal despite the fact that, according to Pace, the defendant's notice

of appeal was filed more than 42 days after the trial court's pronouncement of sentence or disposition of a Rule 32 petition.  (Doc. # 56 at 3-4.)  However, these cases are readily distinguishable from Pace's and do not establish the failure of Alabama courts to regularly follow the rule requiring dismissal of untimely appeals.

In *Ex parte Johnson*, 806 So. 2d 1195 (Ala. 2001), cited by Pace, an incarcerated pro se Rule 32 petitioner was never notified by the trial court that his Rule 32 petition had been denied – even though he had "asked, through the office of the circuit clerk, that he be notified of material developments in his case" – and thus was prevented from filing an appeal of that denial before expiration of Ala.R.App.P. 4(b)(1)'s 42-day period.  806 So.2d at 1197.

The Alabama Supreme Court, indicating that procedural-due-process concerns arose when the trial court assumed a duty of notification it did not otherwise owe the petitioner and then failed to perform that duty, issued a writ of mandamus directing the trial court to vacate its original order denying the Rule 32 petition, enter a new order disposing of the petition, and promptly send the petitioner notification of that order.  806 So.2d at 1195-97.

Unlike the petitioner in *Ex parte Johnson*, Pace does not argue that his notice of appeal was untimely as a result of his or his counsel's failure to receive notice of the trial court's disposition of his Rule 32 petition.  Further, the Alabama Supreme Court did not fail to apply the rule requiring dismissal of untimely appeals in that case, but instead directed that the trial court's original order be vacated and a new order entered, so that the 42-day period for filing notice of appeal would run anew.  The singular circumstances in *Ex parte Johnson*

29

distinguish that case from Pace's and are not sufficient to show that Alabama courts fail to regularly follow the rule requiring dismissal of an appeal when the notice of appeal is untimely.

Pace also cites *Ex parte Jones*, 773 So. 2d 989 (Ala. 1998), and *Hatfield v. State*, 784 So.2d 377 (Ala. Crim. App. 2000), as cases where Alabama courts failed to follow the rule requiring dismissal of untimely appeals.  However, in both of those cases, the Alabama courts, relying on the reasoning of the United States Supreme Court in *Houston v. Lack*, 487 U.S. 266, 270-72 (1988), held that a pro se prisoner's notice of appeal is deemed to be "filed" when it is tendered to prison officials for mailing.[4]  *See Ex parte Jones*, 773 So. 2d at 990; *Hatfield*, 784 So.2d at 378.

Pace was represented by counsel when his notice of appeal was filed, and, in fact, it was his counsel who filed that notice.  Further, in neither *Ex parte Jones* nor *Hatfield* did the Alabama court excuse the untimely filing of an appeal notice.  Rather, the holding in each case was addressed to defining when an incarcerated pro se appellant's notice of appeal is considered "filed."[5]  Again, these cases fail to demonstrate that Alabama courts do not

---

[4]In *Ex parte Jones*, the pro se inmate was attempting to appeal from the trial court's denial of his Rule 32 petition.  In *Hatfield*, the pro se inmate was attempting to file a direct appeal from his convictions.

[5]This court notes that the Alabama Rules of Appellate Procedure were amended on 1 September 2000 to include Rule 4(c), which specifically recognizes that a notice of appeal filed by an inmate confined in an institution and who is proceeding pro se is deemed "filed" when the inmate delivers the notice of appeal to prison authorities for mailing.  *See* Ala.R.App.P. 4(c).

regularly follow the rule requiring dismissal of an appeal when the notice of appeal is untimely.

The respondents refer to numerous decisions by Alabama courts prior to, contemporaneous with, and after Pace's proceedings in which the state court recognized and applied the rule requiring dismissal of an appeal when the notice of appeal is untimely.  *See, e.g.*, *Stewart v. Younger*, 375 So.2d 428 (Ala. 1979); *Melson v. State*, 902 So.2d 715 (Ala. Crim. App. 2004); *King v. State*, 862 So. 2d 677 (Ala. Crim. App. 2003); *Barfield v. State*, 703 So.2d 1011 (Ala. Crim. App. 1997); *Davis v. State*, 644 So.2d 44 (Ala. Crim. App. 1994); *Lewis v. State*, 463 So.2d 154 (Ala. Crim. App. 1985).  In the earliest of the decisions cited by the respondents, *Stewart v. Younger*, 375 So. 2d 428 (Ala. 1979), the Alabama Supreme Court dismissed an appeal where the notice of appeal was untimely, stating:

> In the interest of finality of judgments, the prescribed time within which a notice of appeal must be filed with the trial court cannot be waived nor is it subject to extension of time by agreement of the parties or by order of this Court.  Furthermore, it is our duty to notice the filing date and to dismiss the appeal upon our own motion when the notice of appeal is not filed with the trial court within the prescribed time.

375 So. 2d at 428.  A review of the cases cited by the respondents establishes that at least since the decision in *Stewart*, Alabama courts have consistently adhered to the rule requiring dismissal of appeals when the notice of appeal was filed more than 42 days after the judgment appealed from.  Accordingly, Pace fails to show that the rule is not firmly established and regularly followed in the courts of Alabama.

31

Thus, this court concludes that, with the exception of the three claims that Pace raised on direct appeal to the Alabama Court of Criminal Appeals, all of Pace's claims for federal habeas relief are procedurally defaulted because the last state court to address the issue held that Pace did not file a timely appeal of the trial court's denial of his Rule 32 petition.

The determination that Pace's claims are procedurally defaulted does not end this court's inquiry. Indeed, this court may consider procedurally defaulted claims on the merits if Pace shows either (1) cause for the procedural default and actual prejudice arising out of the violation of federal law, *Wainwright v. Sykes*, 433 U.S. 72. 87 (1977), or (2) a resulting fundamental miscarriage of justice if the federal court does not consider the claims. *Coleman v. Thompson*, 501 U.S. 722 (1991).

In order for a habeas petitioner to demonstrate cause for his defaults, he must establish that an objective impediment, not of his own making, denied him the opportunity of properly presenting his claims to the state courts. *McCoy v. Newsome*, 953 F.2d 1252, 1260 (11th Cir. 1992). Pace asserts as "cause" for his failure to comply with Alabama's procedural requirements for filing a timely notice of appeal the alleged failure of the state trial court clerk to file his notice of appeal on the date it was received, which, according to Pace, was within the 42-day period for filing a notice of appeal.

However, Pace's arguments are based on disputed factual issues concerning the actual filing date that were resolved against him by the Alabama Court of Criminal Appeals. The Alabama Court of Criminal Appeals's resolution of these factual issues is entitled to

deference.  Pace also makes a conclusory assertion that his counsel phoned the office of the trial court clerk on 19 May 1998 – with two days remaining in the 42-day period – and was informed that the notice of appeal had been received, thereby leading counsel to believe that no additional action was required to perfect the appeal.  However, Pace does not state the factual basis for this assertion, and the record contains no statement, sworn or otherwise, from Pace's counsel herself indicating that counsel phoned the trial court clerk to ascertain the status of the notice of appeal.

Indeed, the record reflects that in an application for rehearing filed with the Court of Criminal Appeals requesting that court to reconsider its decision to dismiss Pace's appeal, Pace's counsel, despite arguing several grounds why the appeal should be deemed timely, makes no mention of any telephone exchange she engaged in with the trial court clerk on or around 19 May 1998.  (Doc. # 52, Exh. J.)

`Consequently, this court finds that Pace fails to establish that any external objective factor impeded him or his counsel from complying with the state procedural rule.  Thus, Pace has not made the requisite showing to prove "cause" sufficient to justify a procedural default.  Furthermore, Pace makes no argument that a fundamental miscarriage of justice will occur if the court does not consider his defaulted claims on the merits.  This court therefore concludes that Pace's claims may not survive

### III.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that the petition for habeas corpus relief filed by Pace be denied and that this case be dismissed with prejudice.  It is further

ORDERED that on or before **13 October 2006**, the parties may file objections to the Recommendation.  Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party is objecting.  Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds Securities, Inc*., 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

34

Done this 29th day of September, 2006.


                              /s/ Vanzetta Penn McPherson
                              VANZETTA PENN MCPHERSON
                              UNITED STATES MAGISTRATE JUDGE